## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
## BATESVILLE DIVISION

JAMES L. GEORGE                                                    PLAINTIFF

V.                              NO. 1:10CV00038 JTR

MICHAEL J. ASTRUE,                                                 DEFENDANT
Commissioner, Social
Security Administration

## MEMORANDUM AND ORDER

### I. Introduction

Plaintiff, James L. George, has appealed the final decision of the Commissioner of the Social Security Administration denying his claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). Both parties have submitted Appeal Briefs (docket entries #12, #13).

Judicial review of the Commissioner's denial of benefits examines whether the decision is based on legal error, and whether the findings of fact are supported by substantial evidence in the record as a whole. 42 U.S.C. §§ 405(g), 1383(c)(3); *Wildman v. Astrue*, 596 F.3d 959, 963 (8th Cir. 2010). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In its review, the Court should consider evidence supporting the Commissioner's decision as well as evidence detracting from it. *Wildman*, 596 F.3d at 964. A decision will not be reversed merely

because substantial evidence would have also supported a contrary outcome, or because the Court would have reached a different conclusion. *Id.*

On August 13, 2007, Plaintiff protectively filed applications for DIB and SSI, alleging a disability onset date of July 1, 2007. (Tr. 94, 97, 107-08, 142.) He reported that he was unable to work due to hepatitis C, back problems and diabetes. (Tr. 111.) He was forty-nine years old at the time of his applications, had completed high school and two years of college, and had worked full-time as a painter and repairman from 1992 to 2007.[1] (Tr. 26-28, 112.)

After his claims were denied at the initial and reconsideration levels, Plaintiff requested a hearing before an Administrative Law Judge (ALJ). On May 7, 2009, the ALJ conducted an administrative hearing, at which Plaintiff and a vocational expert testified. (Tr. 23-43.)

The ALJ considered Plaintiff's impairments by way of the familiar five-step sequential evaluation process. Step 1 involves a determination of whether the claimant is involved in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i) & (b), 416.920(a)(4)(i) & (b). If the claimant is, benefits are denied, regardless of

---

[1]In a disability report filed during the application process, Plaintiff stated that his disabling conditions first interfered with his ability to work in 2002 and that he had to stop working in August 2007 because he "just could not do [his] job any more." (Tr. 112.) He indicated he tired easily, could not climb a ladder, needed help on the job, and took three days to do a job that normally took one day. (Tr. 111-12.) Finally, he reported that he had back and leg pain "all day, everyday." (Tr. 120.)

medical condition, age, education, or work experience. *Id.*

Step 2 involves a determination, based solely on the medical evidence, of whether the claimant has a "severe" impairment, *i.e.*, an impairment or combination of impairments which significantly limits the claimant's ability to perform basic work activities. *Id.* §§ 404.1520(a)(4)(ii) & (c), 416.920(a)(4)(ii) & (c). If not, benefits are denied. *Id.*

Step 3 involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment, which is presumed to be disabling. *Id.* §§ 404.1520(a)(4)(iii) & (d), 416.920(a)(4)(iii) & (d). If so, and the duration requirement is met, benefits are awarded. *Id.*

Step 4 involves a determination of whether the claimant has a sufficient residual functional capacity (RFC), despite the impairment(s), to perform the physical and mental demands of past relevant work.  *Id.* §§ 404.1520(a)(4)(iv) & (f), 416.920(a)(4)(iv) & (f). If so, benefits are denied. *Id.*

Step 5 involves a determination of whether the claimant is able to make an adjustment to other work, given claimant's age, education and work experience. *Id.* §§ 404.1520(a)(4)(v) & (g), 416.920(a)(4)(v) & (g). If so, benefits are denied; if not, benefits are awarded. *Id.*

In his November 10, 2009 decision (Tr. 7-16), the ALJ found that Plaintiff: (1)

had not engaged in substantial gainful activity since his alleged onset date; (2) had "severe" impairments of degenerative disc disease (post-operative laminectomy), diabetes mellitus (non-insulin dependent), hepatitis C, and chronic pain; (3) did not have an impairment or combination of impairments that met or equaled a listed impairment; (4) was not fully credible regarding the effects of his symptomatology; (5) had the RFC for a limited range of light work activity, *i.e.*, the ability to lift up to twenty pounds at a time, to frequently lift or carry objects weighing up to ten pounds, to do "a good deal of walking or standing or sitting most of the time," and to do some pushing and pulling of arm or leg controls, with the additional limitation to jobs that allow for alternating between sitting and standing and that do not require constant repetitive bending and stooping, or any climbing;[2] (6) was unable to perform his past relevant work; but (7) considering his age, education, past work experience and RFC, and based on the testimony of the vocational expert, was able to perform other jobs that exist in significant numbers in the national economy.  Thus, the ALJ concluded that Plaintiff was not disabled.

The Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making it the final decision of the Commissioner.  (Tr. 1-3.) Plaintiff then appealed the denial of benefits to this Court (docket entry #2).

---

[2]*See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (light work requirements).

## II.  Analysis

In Plaintiff's Appeal Brief, he argues that the ALJ erred: (1) in improperly discounting his subjective allegations of disabling pain (Pl.'s App. Br. at 12-18); (2) in failing to determine whether he possessed the ability to maintain employment on a continuing basis (*id.* at 18-19); (3) in failing to consider the impact of his pain medication addiction on his ability to work (*id.* at 19-21); and (4) in failing to find that his degenerative disc disease meets the criteria of a listed impairment (*id.* at 21-22). For the reasons discussed below, the Court concludes that Plaintiff's arguments are without merit.

A.     Relevant Medical Evidence.[3]

In August 2000, Plaintiff was evaluated by Richard D. Peek, M.D., with the Arkansas Spine Center.  He told Dr. Peek that he had lower back pain (onset 1974) and associated right leg pain (onset 1999).  Dr. Peek diagnosed L5-S1 spondylolisthesis[4] and a herniated nucleus pulposa at L4-5, right, and recommended

---

[3]Plaintiff has the burden of proving disability for a continuous twelve-month period from his alleged date of onset, July 1, 2007, through the date of the ALJ's decision, November 10, 2009.  *See Medhaug v. Astrue*, 578 F.3d 805, 813 (8th Cir. 2009); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Rather than focusing on the relevant time period, much of Plaintiff's Appeal Brief discusses his medical condition and treatment from 2000 through 2003.  (Pl.'s App. Br. at 3-8, 13, 14-15.)

[4]This is a condition in which a bone (vertebra) in the lower part of the spine slips out of the proper position onto the bone below it.  *Spondylolisthesis*, U.S. National Library of Medicine, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0002240 (last

surgery.  (T. 219-22.)  In November 2000, Plaintiff underwent a posterior spinal fusion at L5-S1, with right iliac crest bone graft, and a laminectomy at L4-5 and S1. (Tr. 334-37.)

A CT scan on July 17, 2002, – his latest in the record – continued to reflect abnormalities at L4-5 and L5-S1, which included: a possible disc herniation at L4-5; exuberant facet arthropathy at L4-5, and "mild-moderate" central canal stenosis; and "extensive abnormality" at L5-S1 consistent with degenerative tearing of the anulus, abnormal soft tissue in the ventral epidural space, Grade I anterolisthesis,[5] and postoperative change.  (Tr. 186-87.)  This CT scan was described as showing a "central disc protrusion/herniation at 4-5."  (Tr. 171.)

From April 2002 to July 2003, Plaintiff received treatment from a pain management specialist, who treated him with pain medication, epidural steroid injections and radio-frequency denervation.  (Tr. 159-91.)  Plaintiff last saw Dr. Peek in August 2003.  They discussed the need for reevaluation at the pain management clinic, further surgery or, as an option, spinal cord stimulation.  (Tr. 205.)

There are no records of any medical treatment from August 2003 until April 16,

---

reviewed July 28, 2010).

[5]Anterolisthesis is "basically another term" for spondylolisthesis, and Grade 1 is mild (less than 25% slippage). *See* http://www.spine-health.com/glossary/a/anterolisthesis (last viewed September 28, 2011).

2007, three months before Plaintiff's alleged onset date of disability.  At that time, Plaintiff presented at the emergency room with increased blood sugars and high blood pressure, stating that he needed to find a local physician.  (Tr. 297-305.)  The next day, April 17, he sought treatment from the Cowherd Family Medical Center for high blood pressure and high blood sugar, also citing a 2002 diagnosis of hepatitis C and his 2000 back surgery.  He complained of "extreme muscle spasms" in his hands, side and leg, anxiety and stress, problems with closing his fists, and excessive urination. (Tr. 232-34.)  At a follow-up on May 1, 2007, he had concerns about his blood sugars, stress, continued muscle spasms, and chronic low back pain.  (Tr. 230-31.)  In July 2007, he returned to check his cholesterol, liver enzymes and blood sugars, and said his hands were falling asleep.  (Tr. 227-29.)

In December 2007, he came in for a check-up and to refill his medications.  He complained of RLS (restless leg syndrome), rhinitis, coughing and hand numbness, and he reported that he was trying to get on Medicaid so he could get started on interferon treatment for his hepatitis C.  (Tr. 285-87.)  His next medical treatments were for a check-up and lab work on May 28, 2008 (Tr. 282-84); muscle spasms in his arms, legs and right abdomen on June 3, 2008 (Tr. 291-96); and a urinary tract infection on August 27, 2008 (Tr. 321-23).

On September 26, 2008, he sought treatment at his family clinic for low back

pain, saying he had "had a problem with his back for a while."  He requested a letter for his disability claim regarding his diabetes, hepatitis C and bad back.  (Tr. 318-20.)

On January 9, 2009, Plaintiff had a follow-up appointment for his blood sugars and cholesterol.  He also complained of congestion and discomfort when sitting or coughing, and "mild" joint pain.  He reported that he was on a nutritional program for hepatitis C that his mother had paid for.  (Tr. 315-17.)  On March 2, 2009, he sought treatment for a spot on his knee that was red and swollen, as well as coughing and a sore inside his nose.  (Tr. 312-14.)

> B.      Plaintiff's Arguments for Reversal.

> 1.      The ALJ Erred in His Credibility Determination.

Plaintiff's first and third arguments challenge the ALJ's assessment of his subjective complaints of pain and functional limitations regarding his back impairment and addiction to prescription pain medication.

An ALJ may discount a claimant's subjective allegations if they are inconsistent with the record as a whole.  *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ's credibility determination normally will be granted deference if he explicitly discredits a claimant's testimony and gives good reasons for doing so.  *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011).  *See* 20 C.F.R. §§ 404.1529(c), 416.929(c)

(listing factors to consider);[6] *Polaski*, 739 F.2d at 1322; SSR 96-7p, 1996 WL 374186, at *3, *5 (July 2, 1996).

Here, the ALJ stated that he had considered Plaintiff's subjective allegations and complaints in accordance with the relevant authority, citing *Polaski* and SSR 96-7p. (Tr. 9.) He found that the objective evidence, including clinical observations, did not "corroborate the degree of functional limitations alleged" due to back pain and further stated that he did not find "the claimant's description of the effects of his symptomatology to be fully credible in light of the overall medical record." (Tr. 10.) He explicitly found that Plaintiff's subjective allegations were "not borne out by the overall evidence" and were not "fully credible to the extent alleged." (Tr. 14.)

In making his findings, the ALJ reviewed the medical evidence regarding Plaintiff's history of back pain, his diagnoses, his surgery in 2000, and his subsequent treatment through 2003. He concluded his analysis with the following specific finding:

> The claimant's back pain symptomatology seems fairly stable; he has had sporadic treatment at best; it looks like there is further surgery

---

[6]As stated in this regulation, the ALJ is required to consider, in addition to the objective medical evidence and the claimant's prior work record, statements and observations made by the claimant, his or her medical providers and any others regarding (1) the claimant's daily activities, (2) the location, duration, frequency and intensity of pain or other symptoms, (3) precipitating and aggravating factors, (4) type, dosage, effectiveness and side effects of medications, (5) non-medication treatments or other measures taken to alleviate pain and symptoms, and (6) functional limitations.

available they could do to help diminish his symptomatology; he has taken pain medication sporadically and none currently; and he is working part-time as a painter, four hours per day several days per week, which even though not at the SGA level, indicates some level of functional capacity.

(Tr. 11.)   The ALJ also found that the evidence, including Plaintiff's ability to continue working, indicated his pain and other symptomatology were "fairly well controlled" and "adequately managed" with medications.   (Tr. 10, 11.)

Plaintiff asserts that the ALJ's credibility determination fails to take into account evidence that: (1) he had developed an addiction to prescription pain medication; (2) his doctor had advised him not to pursue further back surgery; and (3) he was capable of working only because he worked with a friend who provided special accommodations.

In his decision, the ALJ did note Plaintiff's testimony that, following his back surgery, he had to discontinue taking his pain medication "because of becoming addicted and that he had to get off the medicine and then could not physically do what he use[d] to do."  (Tr. 9, 28-29, 32.)  He also noted that Plaintiff had reported to medical providers a history of drug abuse. (Tr. 11, 298.)  The ALJ properly referenced Plaintiff's medication list as reported in his disability application process.  (Tr. 10, 154.)  He also noted Plaintiff's prescription drug history from May 2008 to April 2009 (Tr. 10, 151-53), none of which included any pain medications other than aspirin.

Finally, the ALJ noted Plaintiff's medical records showing that, when he reported to a hospital emergency room on April 16, 2007, he was not taking any medications whatsoever.  (Tr. 11, 298.).[7]  Thus, the ALJ's decision shows that he did consider Plaintiff's prior addiction to pain medication in determining that his failure to take such medication was still inconsistent with his claims of disabling pain.

The ALJ also noted that, after his back surgery in 2000, Plaintiff continued to work full-time at the medium exertional level through 2007 and, during that time, he was not taking prescription pain medication.  He then continued working part-time in 2008 and 2009.  (Tr. 9, 10, 11.)  Likewise, at the time of the hearing, Plaintiff was doing part-time painting, three or four days a week, and he testified that, on good days, he could work four hours.  (Tr. 9, 11, 12, 35.)

The law is clear that working part-time or full-time is inconsistent with a claim of disabling pain and limitations.  See 20 C.F.R. §§ 404.1571, 416.971 (even if work during a period of alleged disability was not substantial gainful activity, it may show that claimant is able to do more work than he actually did); *Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) ("Working generally demonstrates an ability to perform a substantial gainful activity."); *Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004)

---

[7]At the hearing, Plaintiff testified that he took aspirin and ibuprofen for pain relief. (Tr. 32.)

(part-time work is inconsistent with claim of disabling pain).  Thus, the ALJ was entitled to rely on Plaintiff's work history and current work activity in evaluating his credibility and in determining what he was capable of doing.

Similarly, Plaintiff's ability to continue engaging in work activities  supports the ALJ's conclusion that his pain and other symptoms were fairly controlled with treatment and non-narcotic medication.  *See Wildman*, 596 F.3d at 965 (impairment that can be controlled by treatment or medication cannot be considered disabling); *Moore v. Astrue*, 572 F.3d 520, 524-25 (8th Cir. 2009) (claimant's ability to manage back and knee pain through medication is inconsistent with alleged disabling level of pain).

Finally, the ALJ noted Plaintiff's testimony that he accounted for his physical limitations by doing "nothing strenuous;"  doing things like cutting or running edges because those tasks did not hurt so badly; and lying on his shoulder and painting sideways when doing baseboards because he could not bend or squat.  (Tr. 9, 34-36.) This shows that the ALJ did consider Plaintiff's need for accommodations in continuing to work as a painter.  Additionally, the ALJ expressly found that Plaintiff was no longer able to perform the medium-level exertional requirements of his past work as a painter or maintenance repairman and, instead, restricted his RFC to the lesser exertional requirements of light work activity.  (Tr. 13, 14-15.)

Plaintiff contends that the ALJ failed to consider the fact that he was gainfully employed for fifteen consecutive years. It is true that a consistent work record can enhance a claimant's credibility. *O'Donnell v. Barnhart*, 318 F.3d 811, 816-17 (8th Cir. 2003) (claimant's "fourteen-year record of responsible and well-paying jobs" prior to the alleged onset of disability supported her credibility). However, during many of those fifteen years, Plaintiff had the same back condition and other limitations that he now asserts are the basis for disability. As stated, the ALJ was entitled to find that Plaintiff's ability to work in the past with these impairments was inconsistent with a claim that they are presently disabling.

The ALJ also properly recognized that Plaintiff's doctors recommended additional back surgery in November 2003, which Plaintiff did not pursue. (Tr. 10-11, 159, 204.)   The record does not support Plaintiff's contention that Dr. Peek "repeatedly" advised against further back surgery. The only arguable reference cited by Plaintiff is a notation, on June 6, 2002, where Dr. Peek stated that "one would not consider further surgery" as far as his back pain was concerned. (Tr. 209.) However, at Plaintiff's last consultation with Dr. Peek, in August 2003, the doctor discussed the risks and benefits of surgery and the option of spinal cord stimulation, but made no recommendation one way or the other. Dr. Peek also noted that Dr. Thomas Hart (the pain management consultant) had suggested that Plaintiff return for reevaluation. (Tr.

-13-

205.)

In a letter to Plaintiff dated November 25, 2003, Dr. Peek *agreed* with the determination from the Texas Back Institute that Plaintiff needed further fusion surgery. (Tr. 204.) Yet, Plaintiff did not make a return visit to Dr. Hart or Dr. Peek. Under these circumstances, the ALJ did not err in noting that, after seeing Dr. Hart and Dr. Peek in mid-2003, Plaintiff never pursued further back surgery or any other option.

In fact, the record shows that, after 2003, Plaintiff did not seek any treatment whatsoever for his back pain or other conditions until April 2007. As noted above, when he did seek medical treatment in 2007, his main concerns were his high blood sugars and high blood pressure. Although he complained of low back pain and "muscle spasms" in his hands, side and leg at three doctor visits in 2007 and 2008, the doctor noted no musculoskeletal or neurological abnormalities at two of those visits. (Tr. 232-33, 282-83, 318.) He also was found to have no musculoskeletal abnormalities or neurological deficits in other medical examinations in July and December 2007 (Tr. 227-28, 286), and in January and March 2009 (Tr. 312-13, 316). When he sought treatment in the emergency room in June 2008 for muscle spasms, his back was non-tender and he had no neurological deficits. (Tr. 292-93.) After receiving medication, he declined further treatment. (Tr. 294.)

Finally, Plaintiff contends that the ALJ erred in citing his failure to receive more treatment for his hepatitis C as evidence that it was not as limiting as Plaintiff described during the administrative hearing.  During that hearing, Plaintiff testified that he did not have the money or insurance to pay for more aggressive treatment and he was unable to gain admission into a program at UAMS.  (Tr. 30, 121.)

The medical record indicates that Plaintiff was first diagnosed with hepatitis C in 2002, when he was still working full-time and still had insurance.  (Tr. 32, 318). As noted by the ALJ, in December 2007, Plaintiff reported that he was unemployed and trying to get on Medicaid so he could get started on interferon treatments for his hepatitis.  (Tr. 12, 285.)  The ALJ also noted that, in June 2008, Plaintiff turned down hospital admission or a transfer to UAMS for treatment of his hepatitis C and other conditions, and he stated that he would rather go home and go to work.  (Tr. 12, 293-94.)

In 2009, Plaintiff was able to obtain financial resources to undergo a nutritional program for control of his hepatitis C.  (Tr. 317.)  His primary practitioner's treatment notes for September 26, 2008, state that Plaintiff was seeking a letter for his disability claim about his diabetes, hepatitis C and bad back; however, no letter appears in the record and the doctor found him to be "well-appearing" and in "no distress."  (Tr. 318-19.)

After considering the entire record, the ALJ found no evidence – and Plaintiff does not point to any now –  that his hepatitis symptoms could not be controlled adequately with regular medical treatment.   The ALJ further found, in light of Plaintiff's continuing to work, that his hepatitis symptoms had no more than a minimal effect on his ability to carry on gainful activity at the light exertional level.  (Tr. 12.)  Thus, substantial evidence supports that conclusion.

2.    The ALJ Erred in Failing to Make a Specific Finding on Whether Plaintiff Had the Ability to Perform Work on A Continuing Basis.

Plaintiff asserts that the case should be remanded so that the ALJ can make a specific finding on whether Plaintiff is able to maintain employment on a continuing basis.  By definition, RFC is a measure of a claimant's ability to perform work "on a regular and continuing basis."  20 C.F.R. §§ 404.1545(b) & (c), 416.945(b) & (c). The ALJ expressly stated that RFC is an individual's "ability to do physical and mental work activities *on a sustained basis* despite limitations from his impairments."  (Tr. 8) (emphasis added).  It was unnecessary for the ALJ to make any further specific findings in this regard.  *See Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003).

3.    The ALJ Erred in Finding Plaintiff's Degenerative Disc Disease Was Not a Listed Impairment.

If a severe impairment is of the degree set forth in a listing and meets the twelve-month durational requirement, the claimant is conclusively presumed to be

disabled.  *Karlix v. Barnhart*, 457 F.3d 742, 746 (8th Cir. 2006).

In Plaintiff's Appeal Brief, he captioned this argument to allege that the ALJ failed to find that Plaintiff's severe degenerative disc disease meets the listing criteria for herniated nucleus pulposa, *i.e.*, Listing 1.04.  (Pl.'s App. Br. at 2, 21.)  *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04A.  The body of his argument, however, does not mention Listing 1.04 or any supporting medical documentation.  Instead, the Appeal Brief cites to medical findings that Plaintiff has cervical spondylosis and asserts that the impairment should have been evaluated pursuant to Listing 14.09, for inflammatory arthritis, rather than Listing 1.00 for musculoskeletal system disorders.  (Pl.'s App. Br. at 21-22.)  However, the transcript page Plaintiff references does not contain the cited medical findings.  (Tr. 131.)  In fact, Plaintiff was diagnosed with spondylolisthesis in the lumbar and sacral regions (L5-S1), not cervical spondylosis.[8]  (*E.g.*, Tr. 205, 336.)

Regardless of which listing governs, the ALJ's decision shows that he considered all of the evidence regarding Plaintiff's impairments – including his back condition – and concluded that it "does not document the existence of *any* impairment or combination of impairments that meets or equals the level of severity for *any*

---

[8]This is a disorder in which there is abnormal wear on the cartilage and bones of the neck (cervical vertebrae). *Cervical Spondylosis*, U.S. National Library of Medicine, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001472 (last reviewed June 4, 2011).

impairment listed in Appendix 1 to Subpart P, Regulations No. 4 and No. 16." (Tr. 9 [emphasis added].)  The fact that the ALJ did not elaborate on his conclusion, or specifically mention any particular listing, does not require reversal or remand where the record supports his overall conclusion.  *Karlix*, 457 F.3d at 746.

Plaintiff cites to no medical evidence in the record to support his contention that he satisfies Listing 1.04 or any other listing.  The claimant has the burden of showing that his impairment meets all of the listing's specified criteria.  *McCoy*, 648 F.3d at 611.  Merely being diagnosed with a condition named in a listing and meeting some of the listing criteria does not qualify.  *Id.* at 611-12 (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)).

As previously discussed, the medical records through 2003 indicate a diagnosis of a herniated nucleus pulposa at L4-5 (*e.g.*, Tr. 171, 187, 336), which is identified as a disorder of the spine encompassed by Listing 1.04A.  However, the listing also requires "[e]vidence of nerve root compression, characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)."  In May 2003, Plaintiff was found to have "no specific nerve root compressions," and in July 2003, "no strong signs of nerve root compression."

(Tr. 159, 160.)  In August 2003, his reflexes and sensation were intact, and he had a negative sitting straight-leg raising test.  (Tr. 205).

More importantly, Plaintiff cites to no medical evidence after his alleged onset date that he met all of these criteria for the requisite twelve-month period.  The Court's review of the evidence, as recited above, confirms the ALJ's conclusion that Plaintiff had no impairments satisfying listing requirements.

### III. Conclusion

After a careful review of the entire record and all arguments presented, the Court finds that Plaintiff's arguments for reversal are without merit and that the record as a whole contains substantial evidence upon which the ALJ could rely in reaching his decision.  The Court further concludes that the ALJ's decision is not based on legal error.

IT IS THEREFORE ORDERED THAT the final decision of the Commissioner is affirmed and Plaintiff's Complaint is DISMISSED, WITH PREJUDICE.

DATED THIS 29th DAY OF September, 2011.

_____
UNITED STATES MAGISTRATE JUDGE